98 FEB 18 PM 2: 30

U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| MARILYN HOLMES | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) CV-97-PT-1667-M |
| CHARTER COMMUNICATIONS III, L.P. | ) |
| Defendant. | ) |
| vs. | ) |
| TRIAD CAPITAL MANAGEMENT, INC., successor to CABLESOUTH, INC., | ) |
| Third Party Defendant. | |

ENTERED
FEB 1 8 1998

## MEMORANDUM OPINION

### I. INTRODUCTION

Marilyn Holmes ("Holmes") filed this lawsuit against her employer, Charter Communications III, Inc. ("Charter") claiming violations of the Americans with Disabilities Act ("ADA") and the Age Discrimination in Employment Act ("ADEA"). She alleges that she was denied promotions, harassed and constructively discharged by her employer due to her age and perceived disability.



## II. FACTUAL BACKGROUND AND CONTENTIONS

Holmes worked as a customer service representative for Charter's Guntersville office beginning in October 1993. She claims that General Manager Jack Dixon failed to promote, harassed and constructively discharged her from her employment with Charter.

A. Failure to Promote

Holmes maintains that she was passed over for promotions several times in the past due to her age and/or a perception that she was disabled. The Lead CSR position was filled once in November or December of 1995. By whom, Holmes does not know. She cannot be sure that it was even filled. She is sure, however, that whoever filled it was less qualified than she was. In January, 1996, back from maternity leave, Christy Glitzer assumed the job. Holmes also felt she was better qualified to hold the job than Glitzer. Holmes did not know how much experience Glitzer had, how long she was with the company or whether she was ever disciplined. Plaintiff claims she was passed over for the job because of her age or the perception of her disability.

Holmes also claims that she was denied a position as a marketing assistant in June, 1995. Her denial, she asserts, was

based on her age, forty at the time. The woman who filled the position, Beleta Lokey, was almost thirty-seven. Although she does not know what qualifications Lokey had, she maintains that she was better qualified. Holmes contends that underlying these unrealized promotions has been Dixon's failure to accept her abilities.

Holmes was diagnosed with depression in 1993. To her knowledge, Dixon never knew about it. He did know, however, that she took Prozac. Another employee allegedly told him as much. She is not limited by her depression nor her Prozac use. Dixon offered her a promotion to office manager in May, 1996. She told him that she did not want the manager's position. Shortly thereafter, she was promoted to Lead CSR on May 12, 1996. Dixon approved the promotion.

B. Harassment Claims.

Aside from the failure to promote claims, Holmes contends she was harassed by Dixon. She thinks it might have something to do with a dislike for older people. She heard Dixon make a comment that it was a good thing that office manager Charlotte Penny quit when she did, she would not have lasted anyway. She also heard him say about Tom Coolidge, that his health problems and age were affecting his work. He was thirty-seven when he

3

resigned in 1995. When Holmes would rate the performance of another CSR as "poor," Dixon would say that he was showing signs of Alzheimer's. Holmes contends that these comments indirectly harassed her because she felt that she was part of that "older" group. The harassment also took the form of failing to promote her, asking her things and picking on her.

Holmes maintains that the abusive treatment she received from Dixon was also based on his perception that she was disabled and used Prozac. He made teasing comments about her being crazy, having episodes and using Prozac.

In October, 1995, while working in the Guntersville office, she and her coworker, Beleta Lokey, were the only two employees in the office. Company policy required two employees to remain in the office at all times. Therefore, neither employee was allowed to go to lunch. Holmes complained to the office manager in the Albertville office, Regina Leeth. She also called Don Johnson, director of human resources at the corporate office in St. Louis. General manager of both Albertville and Guntersville office, Jack Dixon, reprimanded her over the phone for calling the corporate office under those circumstances. Both raised their voices during this call and Holmes hung up on Dixon. When they met in person, Dixon again castigated her for her actions

4

that day.  Holmes contested Dixon's authority, told him he was being unreasonable and that he thought he was God.  Leeth issued Holmes a "counseling and discipline report" for her behavior during that meeting.

Holmes contends that this report was issued because Dixon perceived her to be disabled.  She claims Dixon thinks she is crazy.  She heard that Dixon told other employees that she was crazy.  In addition, Dixon told her that she was crazy on four or five occasions.  On three or four occasions he told her she was having "one of her episodes" and asked if she had taken her Prozac.

On July 17, 1996, Holmes was "written up" for having a prohibited personal conversation on a customer service line, with former employee Lynn DeSouza.  Included in that discussion was reference to a rumor that Dixon was "screwing" office manager Brenda Harper.  When asked, Holmes said she was talking to a subscriber.(which DeSouza was).  Dixon allegedly accused Holmes of being on a personal call for fifteen minutes, lying about it and told Harper that Holmes was not trustworthy and to start looking for a new Lead CSR.  She was given a written warning for the call.  Holmes does not know if she was written up based on her age or a perceived disability.

5

C. Constructive Discharge.

In July, 1996, the day after being written up, Holmes resigned. She contends that she felt coerced into leaving by the write up, the harassing comments by Dixon, excessive workload and her mother's illness. She contends that Dixon was giving her extra work to do in an effort to burn her out. She speculates that this desire to get rid of her stemmed from her Prozac use. Holmes filed a charge of discrimination with the EEOC on September 16, 1996. On September 24, 1996 she applied for reemployment claiming her reason for leaving was "personal reasons-mother sick/died." She was rehired and is currently employed by Charter.

D. Charter's Contentions.

Charter contends that these claims are due to be dismissed on summary judgment. Her promotions claims are time-barred for failing to file an EEOC charge within 180 days of the discriminatory practice. The promotions were denied in June, 1995, November/December of 1995 and January, 1996. Moreover, she cannot make a prima facie case of discrimination. There is no evidence of an intent to discriminate. Nor is there support for the claim that she was more qualified than those who took the positions.

6

Charter also argues that the harassment claim fails as a matter of law. She concedes that she has no disability. Her only evidence of being regarded as having an impediment are Dixon's alleged comments about her being crazy, having episodes, and using Prozac. She cannot show that Dixon regarded her as having an impairment that substantially limited her ability to work. She acknowledges that he thought her capable of working and performing the CSR job. In fact, she was promoted to Lead CSR with Dixon's approval.

An additional reason for granting summary judgment, Charter argues, is the alleged harassment was neither severe nor pervasive. It did not permeate the workplace so as to alter the conditions of her employment and create an abusive environment.

Charter contends that Holmes' age harassment claim should fail as well. There is no evidence that any alleged harassment was based on her age. Dixon's aforementioned comments are not sufficient evidence of age discrimination toward Holmes. She offers no evidence that the comments or perceived "picking on and meanness" was based on her age. It was far from an actionable level of severity. Any atmosphere Dixon created did not completely destroy the emotional and psychological stability of age-protected workers.

7

Finally, Holmes was not constructively discharged. The conduct complained of does not rise to a level of harassment, much less constructive discharge. The working conditions were not so unpleasant that a reasonable person would have felt compelled to resign. At any rate, Holmes admitted she resigned for "personal reasons-mother sick/died." She mentioned nothing concerning Dixon in her reasons for leaving even after he left the company. Holmes should not be considered a "reasonable employee." At no time did she ever report her concerns about Dixon's behavior or attitude toward her to anyone in management.

### III. COURT'S CONCLUSION

Based on the foregoing contentions and record, and the failure of the plaintiff to respond, after innumerable extensions and opportunities, the court will grant the motion for summary judgment in its entirety and dismiss the present suit with prejudice.

DONE and ORDERED this ___ day of ___

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE